PER CURIAM.
 

 Donna Lane [“Donna”] appeals the trial court’s order granting the motion of her former husband, Glenn Lane [“Glenn”], and modifying the final judgment of dissolution of their marriage to change primary residential custody of their son. Donna contends that the trial court erred both by finding that there had been a material and substantial change in circumstances justifying modification of child custody and by finding that rotating custody was in the best interest of the minor child.
 

 On May 17, 1999, the trial court entered the final judgment dissolving the parties’ marriage, incorporating the parties’ property and marital settlement agreement, which provided for shared parental responsibility of their minor son, and designating Donna as the primary residential parent, subject to reasonable visitation by Glenn.
 

 Their son, who is mildly autistic, was born in 1993, and has overcome a number of significant health issues, including a liver transplant as an infant and subsequent serious complications attributed to the use of immunosuppressants. This required chemotherapy at Shands in Gainesville, which was concluded successfully in January 2007.
 

 As a result of their son’s illness, Donna resigned her employment. In November 2006, she filed a petition for modification of the final judgment, requesting an increase in the monthly child support paid by Glenn. Glenn answered and filed a petition for modification of custody, requesting that he be designated the primary residential parent. After a hearing, the trial court entered its order modifying final judgment, ordering that their son’s residence be rotated equally between Donna and Glenn.
 

 We observe at the outset that the trial court’s consideration of this issue was thorough and conscientious and the order is detailed and clear. We also do not fault the trial court’s conclusion that it would be in their son’s best interest to spend more time with his father. We cannot agree, however,, that there has been a material and substantial change in circumstances warranting a change to rotating custody.
 

 As the trial court observed, their son is a “wonderful, happy, well-adjusted, well-mannered and personable 15 year old” child who has been well cared for and successfully raised with his mother as primary custodial parent. An expert, Dr. Kuzbyt, described their son as having “grown and flourished.” As for his relationship with his parents, Dr. Kuzbyt said:
 

 I think primarily the most important thing to note is that [their son] has an
 
 *181
 
 appropriate attachment and an appropriate ability to interact with both of his parents. His style of interaction and his mother’s style of interaction is one that’s very maternal and very supporting. It is one where [their son] follows his mother’s lead. He’s very cognizant of her, looks for her approval, looks for her support, and Ms[.] Lane provides that type of support. So it’s positive interaction.
 

 His interactions that I observed with Mr. Lane were equally important and equally positive. The differences, I think, are that Mr. Lane’s approach to [their son] fosters and sort of feeds into [their son’s] maturation level. Mr. Lane allowed [their son] and [their son] initiated more conversations, initiated more things in the setting that we were in, whereas, when he was with his mother, it was more of following his mother’s direction.
 

 The trial court articulated five circumstances deemed to warrant the change in custody: (1) “[t]he development of each parent’s parenting style has resulted in unique differences between them, all of which benefits [their son].” (2) Glenn “is no longer obligated to help [his older son Matthew] with his homework, put him to bed, or make sure he gets up for school in the morning” since Matthew “is now 25 and married,” (3) “[their son’s] health has reached the point where he no longer needs to be closely monitored” and “[h]e is not spending much time in Gainesville anymore, being seen by specialists and undergoing treatment related to his liver transplant,” (4) the success of Glenn’s business “has brought [him] greater flexibility in his schedule,” and (5) Donna “still encourages [their son] to sleep with her in the same bed,” believing that “it helps her to monitor his body temperature during the night because he has had a history of spiking fevers.” Plainly, the first four factors do not approach the stringent standard that must be met for a court to change the custody designation in the final judgment based on the parties’ agreement.
 
 See, e.g., Adorno v. Rivera,
 
 847 So.2d 1018, 1019 (Fla. 5th DCA 2003);
 
 Agranoff v. Agranoff,
 
 882 So.2d 1085, 1086 (Fla. 2d DCA 2004);
 
 Jannotta v. Hess,
 
 959 So.2d 373, 374 (Fla. 1st DCA 2007);
 
 Good v. Good,
 
 664 So.2d 329, 330 (Fla. 3d DCA 1995).
 

 The trial court was right to be concerned with the last factor and its implications. Depending on the evidence, such conduct, if improper, could warrant a change. The only evidence in the record concerning Donna’s conduct, however, was limited testimony from Glenn. When asked during the final hearing if he was “aware if [Donna] still sleeps with [then-son],” Glenn testified: ‘Tes. She has [our son] — many instances she says that she has observed — -that she has [our son] sleep in the same bed with her. And I asked her why do you do that, and she says so that I can monitor his temperature.” This testimony does not indicate the onset, duration, and circumstances associated with these “instances” and does not nearly meet the burden required for modification of custody. Indeed, another mother of a child with a similar illness testified that she had done the same thing for the same reason.
 

 We reverse the Partial Order Modifying Final Judgment of Dissolution of Marriage and the Clarification of Partial Order Modifying Final Judgment of Dissolution of Marriage and remand for entry of an order consistent with this opinion.
 

 REVERSED and REMANDED.
 

 MONACO, C.J., GRIFFIN and ORFINGER, JJ., concur.